# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CARTER RODOWICZ,
*Plaintiff*,

v.

FELDMAN, PERLSTEIN
& GREENE, LLC,
*Defendant*.

No. 3:20-cv-00777 (JAM)

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

This case is one of many related to a long-running family feud over the Rodowicz family trust. The trust's sole entity, a limited partnership, owns property that is leased by a company operating a nursing home. Amidst protracted litigation between the Rodowicz siblings in a series of state court and arbitration proceedings concerning the lease and the nursing home's attempts to purchase the property, plaintiff Carter Rodowicz was removed as a trustee by a Connecticut state court, and a non-family member was appointed as the trustee. Carter Rodowicz brings this *pro se* and *in forma pauperis* lawsuit against the law firm Feldman, Perlstein & Greene, LLC ("Feldman") alleging several claims related to Feldman's representation in those prior disputes, as well as a claim for vexatious litigation stemming from Feldman's lawsuit against him seeking to collect legal fees.[1]

Feldman now moves to dismiss the complaint, principally on the ground that Rodowicz lacks standing to bring his claims. I will grant Feldman's motion to dismiss with respect to three of Rodowicz's claims, but will deny the motion with respect to one of Rodowicz's claims for

---

[1] Carter Rodowicz has also brought a related lawsuit before this Court against the current trustee for his alleged actions as trustee in relation to the underlying litigation over the lease. *See Rodowicz v. Stein et al*, Dkt. No. 3:20-cv-00710 (JAM).

which Rodowicz has plausibly alleged facts to show that Feldman represented him individually

and that he has standing to maintain his claim.

### BACKGROUND

The following facts are derived from the allegations in Rodowicz's amended complaint

and are accepted as true only for purposes of this ruling.

In October 2016, Carter Rodowicz, along with Deborah Bernard and Nadine Rodowicz,

signed an Engagement Agreement with Feldman for representation in a matter in Connecticut

state court.[2] The Engagement Agreement is addressed to "Carter, Deborah and Nadine," and

states that "you have retained this firm to represent you in the above captioned matter," in which

each of the three signatories were named defendants.[3] It also states that "[e]ach client is jointly

and individually responsible for the entire amount of fees incurred by the Firm," and that "the

clients collaterally assign to the Firm their interest in the Alma Rodowicz Irrevocable Trust

Dated October 24, 2012 (the 'Trust') including the assets and income from said Trust" to secure

their financial obligations.[4]

The underlying state court matter involved an effort by Joseph Rodowicz, Jr. to "deem

the First Trust Amendment, which added [Carter Rodowicz] as a Trustee of the Trust, as

INVALID" and "to have [Carter Rodowicz] removed as a Trustee."[5] Carter Rodowicz alleges

that the litigation "had to do only with the validity of an amendment to a Trust, undue influence,

incapacity, breach of fiduciary duty and accounting, as it pertained to a Trust … for which [he]

became a Trustee, via the First Amendment to the Trust."[6]

---

[2] Doc. #22-1 at 1-2 (¶¶ 1-2); 20-21 (Ex. A) (Engagement Agreement).
[3] *Id*. at 2 (¶ 2); 20-21 (Ex. A); 24 (Ex. B).
[4] *Id*. at 21 (Ex. A).
[5] *Id*. at 5 (¶¶ 6-7).
[6] *Id*. at 2 (¶ 1).

In the underlying state court proceeding, Feldman "witnessed and observed numerous misrepresentations, fraudulent testimony and statements of Perjury that were being presented to the Court … and deemed by the Court as factual testimony for which [Feldman] failed and/or refused to contest."[7] Those statements were "directed at [Carter Rodowicz], intentionally to discredit, defame, slander, and portray [him] as a[] vengeful, vindictive, insidious person."[8]

Rodowicz "confronted" Feldman during the proceedings and stated that he "needed the opportunity to contest the fraudulent testimony," but Feldman "maintained that the fraudulent testimony was not relevant to the matter before the Court and refused to allow [him] the opportunity to contest the fraudulent testimony."[9] Feldman's failure to contest this testimony "severely damaged [Carter Rodowicz] financially and emotionally."[10]

Rodowicz alleges that, as a result of Feldman's refusal to contest this false testimony, the state court in the underlying matter deemed him to be "an irresponsible individual, with insidious … and self-interested behavior" who did not prioritize the Trust's best interest, and accordingly removed him as a Trustee and manager of Village Manor Associates ("VMA").[11] The factual findings in that underlying state court case "have been use[d] against [Rodowicz] in approximately four other legal matters and the public."[12] Feldman "subsequently acknowledged to the Court that [it] did not address" those misrepresentations because it "did not believe that such testimony was relevant to the issues before the Court."[13]

Additionally, Rodowicz alleges that at some point Feldman also "voluntarily agreed" to represent him "as a Manager of the Trust's sole entity (VMA) and provide representation of

---

[7] *Id*. at 6 (¶ 1).
[8] *Ibid*.
[9] *Id*. at 7 (¶ 2).
[10] *Id*. at 6 (¶ 1).
[11] *Id*. at 7 (¶ 3); 37-48 (Ex. C); *Rodowicz v. Bernard*, 2018 WL 3015053 (Conn. Super. Ct. 2018).
[12] *Id*. at 8 (¶ 4).
[13] *Ibid*. (¶ 5).

VMA."[14] Rodowicz and Feldman "agreed, verbally, that VMA would be responsible for fees, costs and expenses incurred by [Feldman], relative to services provided by [Feldman] in representation of [Rodowicz] as Manager of VMA and in its representation of VMA."[15]

In November 2016, Colonial Health & Rehabilitation Center of Plainfield, LLC ("Colonial"), a nursing facility that leased VMA, filed for arbitration against VMA in Florida.[16] Feldman was aware that Joseph Rodowicz, Sr. was acting as the manager of VMA, diverted all rental income and froze VMA funds, and conducted a "sham arbitration" with Colonial in which VMA provided no defense and concurred with Colonial's claim for damages.[17] Carter Rodowicz advised Feldman of the outcome of the arbitration and that VMA's Florida counsel was transferring it to Connecticut so that Feldman could file an appropriate motion to vacate, modify, and/or dismiss the arbitration award.[18] But Feldman stated it would withdraw services to Rodowicz unless he provided some form of payment for services performed, and, in retaliation for Rodowicz's failure to provide payment, Feldman refused to file the appropriate motion.[19] That "severely damaged VMA and subsequently the Trust for which [Rodowicz] is a beneficiary, thereby damaging [Rodowicz] in the amount of approximately $750,000."[20]

Rodowicz also alleges that Feldman fraudulently billed the Trust for legal services it provided Rodowicz and VMA, "thereby depleting considerable funds of the Trust for which [Rodowicz] was a beneficiary."[21] Feldman refused to correct the billings in bad faith.[22]

In 2019, Feldman withdrew as counsel for Rodowicz, allegedly "in violation of the

---

[14] *Id*. at 5 (¶ 10); 9 (¶ 1).
[15] *Id*. at 13 (¶ 2).
[16] *Id*. at 9 (¶ 3); 13 (¶ 3)
[17] *Id*. at 9-10 (¶¶ 2-4).
[18] *Id*. at 11 (¶¶ 3-7).
[19] *Ibid*. (¶¶ 7-8).
[20] *Id*. at 11-12 (¶ 8).
[21] *Id*. at 13 (¶ 5).
[22] *Id*. at 14 (¶ 7).

Engagement Agreement and other verbal agreements."[23]

Rodowicz claims he has "suffered financial losses and been subjected to extreme emotional[] duress as a result of [Feldman's] conduct."[24] The Trust "became insolvent … mainly due to [Feldman's] failure to perform, numerous duties and responsibilities."[25]

In June 2020, Rodowicz, a Florida citizen, filed this lawsuit against Feldman, a Connecticut-based law firm, pursuant to this Court's diversity jurisdiction.[26] In September 2020, Feldman sued Rodowicz in Connecticut state court for non-payment of litigation expenses.[27] That state court litigation is ongoing.[28]

In January 2021, Rodowicz filed an amended complaint in this case. Count I of his amended complaint alleges breach of the implied covenant of good faith and fair dealing as well as negligence related to Feldman's representation of Rodowicz.[29] Count II alleges breach of the implied covenant of good faith and fair dealing as well as malpractice and negligence related to Feldman's representation of Rodowicz as manager of VMA.[30] Count III alleges legal malpractice, fraudulent misrepresentation, and unjust enrichment, principally related to fraudulent billing to the Trust for legal services.[31] Count IV alleges that Feldman is engaging in vexatious litigation through its state court lawsuit against Rodowicz seeking to collect legal fees.[32] Rodowicz seeks monetary damages, punitive damages, injunctive relief, and costs.[33]

---

[23] *Id*. at 13 (¶ 5).
[24] *Id*. at 9 (¶ 9); *see also id*. at 12 (¶ 10); *id*. at 15 (¶ 10).
[25] *Id*. at 17 (¶ 9).
[26] Doc. #1.
[27] Doc. #22-1 at 16 (¶ 4).
[28] *See Feldman, Perlstein & Greene, LLC v. Rodowicz et al.*, HHD-CV20-6133690-S, available at http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHDCV206133690S [https://perma.cc/M9T2-W9Y8] (last accessed August 2, 2021).
[29] Doc. #22-1 at 6-9.
[30] *Id*. at 9-12.
[31] *Id*. at 12-15.
[32] *Id*. at 15-17.
[33] *Id*. at 18.

Feldman now moves to dismiss the complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(7). Feldman argues that the Court lacks subject matter jurisdiction over this action because Rodowicz lacks standing for Counts I to III and because the vexatious litigation claim is not ripe, and, alternatively, that the complaint should be dismissed for failure to join indispensable parties.[34] Rodowicz has filed an opposition, and Feldman has filed a reply.[35] I heard oral argument on May 10, 2021, and this ruling now follows.

## DISCUSSION

The standard that governs a motion to dismiss under Rule 12(b)(1) is well established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain subject matter jurisdiction. *See, e.g.*, *Lapaglia v. Transamerica Cas. Ins. Co.*, 155 F. Supp. 3d 153, 155-56 (D. Conn. 2016).

If the plaintiff is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Meadows v. United Services, Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*).

### Counts I to III

Feldman moves to dismiss Counts I to III on the grounds that Rodowicz does not have standing to bring the claims alleged in the amended complaint and, in the alternative, that Rodowicz has failed to join indispensable parties.

---

[34] Doc. #24.
[35] Doc. #28; Doc. #29.

Article III of the Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. For a federal court to have subject matter jurisdiction over a case, a plaintiff must show that he has "standing"—that is, an injury in fact that was caused by the defendant and for which a court has authority to furnish relief. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). "Standing is not dispensed in gross," and "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Ibid.*

The question of standing in this case concerns whether Rodowicz seeks to enforce his own rights or whether he seeks to enforce the rights of the Trust for which he is a beneficiary. "In most cases, a trustee has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust, including any legal claim the trustee holds in trust for the beneficiaries. The trustee then has the sole responsibility for determining whether to settle, arbitrate, or otherwise dispose of the claim." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 567 (1990).[36] "As holder of the title to trust property and as the representative of the trust and its beneficiaries, the trustee is normally the appropriate person to bring (and to decide whether to bring) an action against a third party on behalf of the trust." *Browning v. Brunt*, 330 Conn. 447, 456 (2018).

As the Connecticut Supreme Court has explained:

In addition to having legal title to the trust property, the trustee usually has its possession and a right to continue in possession, and almost always has all the powers of management and control which are necessary to make the trust property productive and safe. Any wrongful interference with these interests of the normal trustee is therefore a wrong to the trustee and gives him a cause of action for redress or to prevent a continuance of the improper conduct. Although the

---

[36] Unless otherwise indicated, this ruling omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

beneficiary is adversely affected by such acts of a third person, no cause of action inures to him on that account.

*Id*. at 456–57.

As a result, a "beneficiary has no standing to sue a third party on behalf of the trust" unless a specified exception applies, such as that "the trustee is ... improperly failing to protect the beneficiary's interest." *Id*. at 456, 458. "[I]n order to demonstrate that they fall under this exception, beneficiaries must demonstrate that the trustee either is improperly refusing or improperly neglecting to bring an action on behalf of the trust." *Id*. at 458.

Here, Rodowicz was no longer a trustee of the Trust when he commenced this lawsuit, but Count II of his complaint principally alleges that Feldman's actions related to its representation of VMA "severely damaged VMA and subsequently the Trust for which [Rodowicz] is a beneficiary, thereby damaging [Rodowicz] in the amount of approximately $750,000."[37] Similarly, Count III of Rodowicz's complaint alleges damage to the Trust due to Feldman's alleged fraudulent billing of legal services, "thereby depleting considerable funds of the Trust for which [Rodowicz] was a beneficiary."[38] Because these claims are based on alleged damage to the Trust, or to Rodowicz as a beneficiary of the Trust, he does not have standing to pursue them unless he demonstrates that an exception to the general rule applies.

As to improper refusal, "in order to invoke the exception on this basis, a beneficiary must first demand that the trustee bring an action against a third party and be refused by the trustee." *Ibid*. Rodowicz has not alleged that he demanded that the current trustee sue Feldman and that the trustee has improperly refused. Nor has he argued that the current trustee has improperly neglected to bring an action on behalf of the Trust, and Rodowicz's complaint "do[es] not

---

[37] Doc. #22-1 at 11-12 (¶ 8).
[38] *Id*. at 13 (¶ 5).

necessarily imply factual allegations that [the current trustee] improperly neglected to bring an action against [Feldman]." *Id.* at 460. Although Rodowicz's allegations could possibly "demonstrate that [he] suffered harm due to [Feldman's] actions and that defendant[] did not take action to prevent the harm, they fall short of demonstrating that [the current trustee] *improperly* failed to sue the defendant[] for their alleged breach," and therefore dismissal of these claims for lack of standing is appropriate. *Id*. at 461-62 (emphasis in original).

Likewise, to the extent that Rodowicz alleges that Feldman's actions severely damaged VMA or arose from Feldman's representation of VMA, he does not have standing to pursue those claims on behalf of VMA because he is no longer a manager at VMA, which is a separate legal entity. Accordingly, I will grant Feldman's motion to dismiss Counts II and III of Rodowicz's complaint because Rodowicz lacks standing to pursue these claims that are premised entirely on damage to the Trust, VMA, and/or Rodowicz solely as a beneficiary of the Trust.

As to Count I, however, Rodowicz argues that he signed the Engagement Agreement for representation in his capacity not only as a trustee, but as an individual, and that he was personally injured by the low quality of Feldman's representation.[39] Although labeled differently, this claim essentially alleges legal malpractice. Feldman argues that Rodowicz does not have standing to pursue such a claim because it only represented the Trust—not Rodowicz personally—as demonstrated by the Engagement Agreement, which "unambiguously states that [Feldman] was retained *jointly* by the three co-trustees of the Trust."[40]

But Feldman's interpretation is not reflected in the Engagement Agreement, which only uses the term "jointly" with respect to the three clients being "jointly and individually

---

[39] *Id*. at 2-3, 6-9; Doc. #28 at 2-4 (¶¶ 2-8).
[40] Doc. #29 at 2 (emphasis in original).

responsible" for the fees associated with the representation.[41] The Engagement Agreement refers to "[e]ach of the clients" and "each client," and holding those clients individually responsible for the payment of fees is a strong indication that Feldman intended to represent them as individuals.[42] The Engagement Agreement does not mention the three clients' capacities as trustees; nor does it directly state that the clients are being retained only for collective representation on behalf of the Trust. And the underlying lawsuit, though related to the Trust, does not name Carter Rodowicz, Deborah Bernard, and Nadine Rodowicz specifically in their capacity as trustees.[43]

Moreover, basic principles of legal ethics suggest that, to the extent the Engagement Agreement was unclear, it was Feldman's responsibility to clarify the scope of representation. *See, e.g.*, Restatement (Third) of the Law Governing Lawyers § 14 (explaining that an attorney-client relationship arises when "a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person" and "the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services"). As a result, I conclude that the complaint plausibly alleges for initial pleading purposes that Feldman agreed to represent Rodowicz as an individual in the underlying litigation with respect to the legal malpractice as alleged in Count I.

If Feldman represented Rodowicz individually, then he is a proper plaintiff with standing to allege the legal malpractice claim in Count I of his complaint. Rodowicz argues that he derived great personal value from being a trustee, that he retained Feldman to represent him, and that he "has been personally damaged, emotionally, reputationally and financially as a direct

---

[41] Doc. #22-1 at 21 (Ex. A).
[42] *Id*. at 20-21 (Ex. A).
[43] *Id*. at 24 (Ex. B).

result of [Feldman's] failure to properly represent [him]" and his removal as a trustee.[44]

Feldman argues that this claim is based on its "alleged failure and/or refusal to contest [Rodowicz's] removal as trustee and manager of its sole entity, VMA" and that Rodowicz "does not allege how his removal has personally caused him to suffer harm or damages."[45] But Feldman misses Rodowicz's core argument, which is that maintaining his role as a trustee was important to him personally and that he was personally harmed by his removal from that position. Feldman also ignores that Rodowicz alleges that he stated, in the course of his representation, that he "needed the opportunity to contest the fraudulent testimony," but that Feldman "maintained that the fraudulent testimony was not relevant to the matter before the Court and refused to allow [him] the opportunity to contest the fraudulent testimony."[46] As a result of Feldman's refusal to contest this false testimony, Rodowicz alleges that the state court in the underlying matter made factual findings against him as an individual that "have been use[d] against [him] in approximately four other legal matters and the public."[47]

In a motion to be heard later in the state court proceeding that Rodowicz includes in his opposition, he states that had he "been fully heard, the voluminous negative allegations made directly against [him] … would have clearly and incontestably proven to be acts of slander, Perjury … and libelous acts."[48] He further states that "[a]s a result of libelous acts, perjury, slanderous statements continuously being made … [by others], my life has been ruined, I am in pain daily, both emotionally and physically. I can sleep for only short time frames and dream constantly and often think of just ending the pain."[49]

---

[44] Doc. #28 at 3 (¶ 3); *see also id*. at 4-5 (¶¶ 5, 8).
[45] Doc. #24-1 at 19.
[46] Doc. #22-1 at 7 (¶ 2).
[47] *Id*. at 8 (¶ 4).
[48] Doc. #28 at 12 (¶ 8).
[49] *Id*. at 13.

Taking Rodowicz's allegations as true for the purpose of this motion and reading them liberally, he plausibly alleges that he was personally injured by Feldman's failure to allow him to refute the factual allegations in the complaint and the low quality of its representation that led to his removal as a trustee. Although many of Rodowicz's alleged damages relate to harm that is derivative of harm to the Trust or VMA, Count I alleges that Rodowicz was personally injured by Feldman's representation of him as an individual, and therefore he has standing to pursue Count I of his complaint.

Feldman argues in the alternative that Rodowicz's claims should be dismissed under Rule 12(b)(7) because Rodowicz has not joined Deborah Bernard, Nadine Rodowicz, and/or VMA in this action, and that they are indispensable parties because Bernard and Nadine Rodowicz also signed the Engagement Agreement with Feldman and some of Carter Rodowicz's claims are premised on harm to VMA.[50]

"Fed. R. Civ. P. 19 sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party. First, the court must determine whether an absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a).... If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b)." *Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) (Sotomayor, J.). Under Rule 19(a), a party is required to be joined if, in that party's absence, the Court cannot accord complete relief among the existing parties or if that party claims an interest related to the action and disposing of the action without that party may impede the party's ability to protect the interest or leave an existing party

---

[50] Doc. #24-1 at 25-31.

subject to a substantial risk of multiple liability or inconsistent obligations. *See* Fed. R. Civ. P. 19(a).

The other signatories to the Engagement Agreement are not indispensable parties as it relates to Rodowicz's claims about Feldman's representation of him as an individual and the harm that he alleges he has personally faced due to Feldman's actions. Feldman's argument depends on the three individuals being parties to the Engagement Agreement as co-trustees and their right to also pursue legal remedies related to the Engagement Agreement, as well as Rodowicz's attempt to bring claims on behalf of VMA. But that argument does not apply to the extent that Rodowicz was individually represented by Feldman and is seeking to redress the injuries that he personally incurred as a result of his removal as a trustee and Feldman's alleged failure to allow him to refute factual allegations directed at him personally. The other signatories do not have a direct interest in those individual claims, and there is no reason why joinder is necessary to allow the Court to accord complete relief to Rodowicz on them. Therefore, I will deny Feldman's motion to dismiss for failure to join indispensable parties.

Feldman has not otherwise challenged the legal adequacy of Rodowicz's claims in Count I. Accordingly, I will deny the motion to dismiss Count I to the extent that it alleges that Feldman represented Rodowicz in an individual capacity and that Rodowicz was personally injured by its alleged legal malpractice.

### Count IV

Feldman moves to dismiss Count IV on the ground that the vexatious litigation claim is not ripe because the underlying "vexatious" litigation involving Feldman's lawsuit against Rodowicz for legal fees is still pending.[51] "To be justiciable, a cause of action must be ripe—it

---

[51] Doc. #24-1 at 22-25.

must present a real, substantial controversy, not a mere hypothetical question." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 687 (2d Cir. 2013). A "claim of vexatious litigation requires proof that the plaintiff was the defendant in a prior lawsuit decided in his favor and that the lawsuit was commenced without probable cause and for an improper purpose." *Simms v. Seaman*, 308 Conn. 523, 549 (2013). A "condition precedent to the institution of an action for vexatious litigation is that the original action has terminated unsuccessfully. … Thus, for a vexatious litigation claim to be ripe for adjudication, the party must allege, among other facts, that the allegedly vexatious litigation has terminated in its favor." *Scalise v. E. Greyrock, LLC*, 148 Conn. App. 176, 181–82 (2014).

Here, Rodowicz's vexatious litigation claim is not ripe because it is based on a lawsuit that Feldman filed against him in state court that is still pending.[52] Rodowicz has not tried to defend against dismissal of the vexatious litigation claim in his opposition or at oral argument. Accordingly, I will grant Feldman's motion to dismiss Count IV.

## CONCLUSION

For the reasons set forth above, the Court GRANTS in part and DENIES in part Feldman's motion to dismiss (Doc. #24). Specifically, the Court GRANTS the motion with respect to Counts II, III, and IV for lack of subject matter jurisdiction. The Court DENIES the motion with respect to Count I to the extent it alleges that Feldman represented Rodowicz in an individual capacity and that Rodowicz was personally injured by its alleged legal malpractice.

---

[52] *See Feldman, Perlstein & Greene, LLC v. Rodowicz et al.*, HHD-CV20-6133690-S, available at
http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HHDCV206133690S
[https://perma.cc/M9T2-W9Y8] (last accessed August 2, 2021).

It is so ordered.

Dated at New Haven this 2nd day of August 2021.

/s/**_Jeffrey Alker Meyer_**
Jeffrey Alker Meyer
United States District Judge